IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

BERNADETTE G. LOGAN,                    )
                                        )
            Plaintiff,                   )          Case No. 4:11-cv-00008
                                        )
v.                                      )          **MEMORANDUM OPINION**
                                        )
BODDIE-NOELL ENTERPRISES, INC.,         )          By:  Jackson L. Kiser
                                        )          Senior United States District Judge
            Defendant.                   )

Before me are Defendant's Motion to Exclude Plaintiff's Expert Witness and Defendant's Motion for Summary Judgment.  The Court held a hearing on these motions on January 12, 2012, at which counsel for both Plaintiff and Defendant appeared and presented argument.  Having thoroughly reviewed the briefs, the record, and the arguments of counsel, the matter is now ripe for decision.  After careful consideration, for the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**.  Accordingly, I deem Defendant's Motion to Exclude Plaintiff's Expert Witness **MOOT**.

## I.      STATEMENT OF FACTS

This case arises from a slip and fall that occurred at a Hardees's restaurant in the City of Danville on January 30, 2010.  (Logan Dep. 28:5–18, June 15, 2011.)  The essential facts appear undisputed.  Plaintiff Bernadette G. Logan ("Plaintiff") awoke at her Chatham residence at approximately 4:45 a.m. on January 30, 2010, to discover that it was snowing and that the ground and roads were completely covered with snow.  (*Id.* 5:18–19, 30:4–31:2.)  On that day, Plaintiff was scheduled to work from 7:00 a.m. to 7:00 p.m. at Intertape Polymer Group, Inc., in Danville.  (*Id.* 9:17–19, 30:1–3.)  After seeing the severe weather conditions, Plaintiff telephoned her co-worker, Adam Cooper ("Cooper"), to inquire whether he was driving to work.  (*Id.* 30:4–

1

31:2.) Although Plaintiff owned a vehicle at this time, she was afraid to drive in the severe weather. (*Id.* 31:3–14.) Plaintiff learned that management had asked Cooper to provide transportation for employees who did not feel comfortable driving in the snow, and she asked him to pick her up. (*Id.* 30:8–12.) When Cooper arrived at Plaintiff's residence at approximately 5:45 a.m., snow was still falling. (*Id.* 32:23–24.) Shortly after arriving at work, Cooper received a telephone call from another co-worker, Keith Cobbs ("Cobbs"), requesting a ride, and he agreed to pick him up. (*Id.* 34:19–35:3.) Plaintiff accompanied Cooper to show him the way to Cobbs's residence. (*Id.* 35:4–9.) After picking up Cobbs and en route to work, the three coworkers decided to stop at a Hardees's restaurant for breakfast. (*Id.* 35:16–21.) Cooper testified that "moderate snowfall" continued on the way to Hardees's. (Cooper Dep. 10:23–11:8, June 15, 2011.)

The co-workers arrived at Hardees's between 7:00 a.m. and 7:30 a.m.[1] (*Id.* 7:7–10; Roberson Dep. 25:16–23.) As the vehicle pulled into the restaurant parking lot, Plaintiff noticed that the parking lot was "full of snow" and had not been scraped or plowed. (Logan Dep. 35:22–26:8.) In addition, the sidewalk outside the restaurant was "covered," and Plaintiff could not see it. (*Id.* 39:7–12.) Plaintiff testified that the sidewalk did not appear to have been shoveled, treated, or plowed. (*Id.* 39:16–21.) She stated that, from the vehicle to the restaurant, she walked entirely on snow covered ground. (*Id.* 38:23–39:2.) Cooper also testified that he saw approximately two inches of snow on the ground and that neither the parking lot nor the sidewalks had been plowed or shoveled. (Cooper Dep. 12:1–6.) It is undisputed that the

---

[1] The record is unclear as to exactly what time the accident occurred. Plaintiff could not recall the exact time. Cooper testified that it was approximately 7:00 a.m. (Cooper Dep. 7:7–10.) Roberson noted in her incident report that the accident occurred at 7:25 a.m. (Roberson Dep. 25:16–23.) According to the records of Elizabeth Reaves, an EMT who responded to the scene, the call about the accident was received at 7:26 a.m. (Reaves Dep. 10:22–11:13, June 15, 2011. The weight of the evidence, therefore, appears to put the accident just prior to 7:25 a.m.

2

restaurant sidewalk was completely covered with snow except for scattered footprints. (Cooper Dep. 14:17–15:8; Cobbs Dep. 21:18–22:6.) As Plaintiff entered the building from the sidewalk, she saw no warning signs or Hardees's employees engaged in any activity. (Logan Dep. 40:14–20.) As Cobbs held both doors open for her, Plaintiff entered the outer restaurant entrance into the airlock and then proceeded through the inner entrance into the dining room. (Logan Dep. 41:2–4; Cobbs Dep. 22:18–23:15.) Just as she entered the restaurant dining room, Plaintiff slipped on a "watery substance" on the floor and fell. (Logan Dep. 41:2–13, 44:1–22; Cooper Dep. 19–22; Cobbs 33:16 – 34:14.)

Plaintiff testified that she saw no warning signs or cones and no floor mat as she made her way through the airlock and proceeded through the inner door into the dining room. (Logan Dep. 43:18–24.) Cooper and Cobbs, likewise, saw no warning signs or cones at or near the entrance. (Cooper Dep. 20:17–20; Cobbs Dep. 22:10–15, 28:21–29:4, 40:8–10.) Plaintiff further testified that she did not see anything on the floor because she was looking straight forward, not down. (Logan Dep. 45:5–46:13.) By contrast, when Cooper entered the airlock, he immediately noticed that the floor was wet and it appeared that people had tracked in water from outside. (Cooper Dep. 18:2–7.) He testified that the water extended "[l]ike a path to the front counter." (Id. 18:8–22.) Moreover, he stated that he could clearly see the standing water as he entered through the outer door. (Id. 18:23–19:5, 22:19–21.) He stated that the trail of liquid was colorless and approximately two feet in width. (Id. 30:4–9;32:10–13.) Cobbs, too, stated that when he entered the air lock, he noticed that "[t]he whole floor was wet" and described the area as "real wet." (Cobbs Dep. 27:6 – 15.) Moreover, he stated that he noticed the water on the floor immediately on entering the outer door. (Id. 33:10–15.) All three testified that they have

3

no knowledge as to how long the liquid was present prior to Plaintiff's fall. (Logan Dep. 50:17–22; Cooper 19:6–12; Cobbs Dep. 30:23–31:3.)

Cindy Roberson, the Hardee's manager on duty that morning, testified that she cleared the outside sidewalk of snow and deployed ice melt twice that morning, once at approximately 4:00 a.m. or 5:00 a.m., and again at approximately 6:45 a.m. (Roberson Dep. 17:5–18:17, June 15, 2011.) She also testified that she placed warning cones on the sidewalk and in a visible location in the airlock before opening the restaurant that morning. (Roberson Dep. 18:20–19:5, 20:18–21:21) Prior to the accident, she was in the restaurant kitchen preparing food and had no view of the dining area. (*Id.* 9:14–10:3.) She further testified that she was not aware of any water in the airlock or on the dining room floor prior to Plaintiff's fall. (*Id.* 15:15–23, 23:4–22.) When Roberson was informed about Logan's fall, Cobbs suggested that she "should put something down or put something outside." (Logan Dep. 51:18–22.) She responded that it was snowing so hard that she could not continue clearing and salting the outside sidewalk. (*Id.* 51:23–52:2.) At this point, a Hardees's employee resalted the sidewalk and placed warning cones. (Cobbs Dep. 39:3–40:4.) Paramedics arrived and took Plaintiff to the emergency room at Danville Regional Hospital where she underwent x-rays and was diagnosed with a broken ankle. (Logan Dep. 55:16–56:8, 59:8–20.)

## II.      STATEMENT OF PROCEDURAL HISTORY

Plaintiff originally filed the present action against Defendant Boddie-Noell Enterprises, Inc. ("Boddie-Noell") and Cindy Roberson ("Roberson") in the Circuit Court for the City of Danville. (Joint Notice of Removal, Ex. A [ ECF No. 1].) In her Complaint, Plaintiff alleges that on January 30, 2010, she was an invitee at Hardees's restaurant, a business owned and operated by Boddie-Noell. (*Id.* ¶ 6–7.) As such, Boddie-Noell owed Plaintiff a duty to maintain

4

its premises in a reasonably safe condition.  (*Id.* ¶ 8.)  The Complaint alleges that Boddie-Noell breached this duty to Plaintiff by allowing water to accumulate on the restaurant floor and failing to warn of this unsafe condition, as a proximate result of which Plaintiff suffered injury.  (*Id.* ¶ 10–12.)  The Complaint originally sought judgment jointly and severally in the amount of $150,000 against Boddie-Noell and Roberson.  (*Id.* ¶ 5.)

On February 16, 2011, Boddie-Noell and Roberson filed a Joint Notice of Removal, removing the matter to this Court pursuant to 28 U.S.C. §§ 1441 and 1446 on the grounds that this Court has diversity jurisdiction over the matter pursuant to 28 U.S.C. § 1332.  (Joint Notice of Removal ¶ 1 [ECF No. 1].)  Complete diversity of citizenship was originally lacking because both Plaintiff and Roberson are citizens of Virginia.  On February 17, 2011, however, Roberson filed a Motion to Dismiss her as a defendant, alleging fraudulent joinder.  (Def.'s Mot. to Dismiss ¶ 1 [ECF No. 7].)  After receiving briefs and hearing oral argument from both parties on the issue of fraudulent joinder, I entered an Order and Memorandum Opinion on December 1, 2011, finding that Plaintiff could not possibly state a cause of action against Roberson.  (Mem. Op. [ECF No. 43].)  Accordingly, I dismissed Roberson as a party, denied Plaintiff's Motion to Remand, and retained jurisdiction of this case.  (Order Dec. 1, 2011 [ECF No. 44].)

On November 23, 2011, prior to dismissal of Roberson as a party, Defendants filed a currently pending Motion to Exclude Plaintiff's Expert Witness, arguing that Plaintiff's failure to comply with the Pretrial Order should preclude the testimony of her expert, Dr. Robert Widmeyer.  (Mot. to Exclude Pl.'s Exp. ¶1–4 [ECF No. 41].)  The Motion argues that, under the Pretrial Order, "[a]ny expert witness must prepare a written report which shall conform to the requirements of Rule 26."  (*Id.* ¶ 1.)  On November 18, 2011, Plaintiff submitted her Identification of Expert Witnesses and Supplement of Interrogatories (*id.* Ex. 1), disclosing Dr.

5

Widmeyer as an expert (*id.* ¶ 3). The Motion argues that Plaintiff disclosed her expert in the form of a Supplemental Interrogatory Response and failed to file a Rule 26 report as required by the Pretrial Order. (*Id.*) Accordingly, it asserts, the Court should preclude Plaintiff from offering expert testimony at trial pursuant to Rule 16(f) and Rule 37. (*Id.* ¶ 4, 5.)

On December 21, 2011, after dismissal of Roberson as a party, Boddie-Noell filed a Motion for Summary Judgment (Def.'s Mot for Sum. J. [ECF No. 47]), and Memorandum in Support (Mem. in Sup. of Def.'s Mot. for Sum. J. [ECF No. 48]). Boddie-Noell argues that it is entitled to summary judgment on two alternative grounds: (1) Plaintiff cannot make out a *prima facie* case of negligence because she is unable to prove that Boddie-Noell had notice of the defective condition; (2) and Plaintiff is guilty of contributory negligence as a matter of law because the defective condition was open and obvious. (Mem. in Sup. of Def.'s Mot. for Sum. J. pg. 6–9.) On January 3, 2012, Plaintiff filed a cross Motion for Summary Judgment[2] (Pl.'s Mot for Sum. J. [ECF No. 51]), and on January 4, 2012, filed her Memorandum in Support of Plaintiff's Motion for Summary Judgment/Memorandum Opposing Defendant's Motion for Summary Judgment (Mem. in Supp. of Pl.'s Mot. for Sum. J. [ECF No. 52]). Plaintiff appears to

---

[2] Under the Pretrial Order entered on February 16, 2011, Plaintiff's Motion for Summary Judgment is untimely. The Pretrial Order states: "All Rule 12 and Rule 56 motions must be heard or submitted on briefs no later than 30 days prior to trial. To meet this deadline the moving party must allow adequate response time for the opposing party, as set forth above." (Pretrial Order ¶ 5 [ECF No. 5].) The preceding paragraph provides that "[b]riefs in opposition must be filed within 14 days of the date of service of the movant's brief . . . Movant's reply brief must be filed within 7 days of the date of service of the brief in opposition to the motion " (Pretrial Order ¶ 4.) Plaintiff served her Memorandum in Support of Plaintiff's Motion for Summary Judgment/Memorandum Opposing Defendant's Motion for Summary Judgment on January 4, 2012. (Mem. in Supp. of Pl.'s Mot. for Sum. J. pg. 11.) Allowing twenty-one additional days for adequate response time, therefore, Plaintiff's Motion for Summary Judgment could not be heard until January 25, 2012. This matter is set for trial on February 16–February 17, 2011, less than thirty days from that date. [ECF No. 10.] Accordingly, I will not consider Plaintiff's Motion for Summary Judgment, and I construe and consider her Memorandum in Support only as a brief in Opposition to Defendant's Motion for Summary Judgment.

argue that: (1) the evidence shows that the defective condition existed for a sufficient length of time to charge Boddie-Noell with constructive notice; and (2) whether the defect was open and obvious constitutes a jury issue in this case. On January 10, 2012, Boddie-Noell filed its Memorandum in Response to Plaintiff's Motion for Summary Judgment.[3] (Def.'s Mem. in Resp. to Pl.'s Mot. for Sum. J. [ECF No. 53].)

## III. STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). The court must view the facts and the inferences to be drawn from them in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The court must not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133 (2000).

The moving party has the initial burden of pointing out to the court the deficiency in the non-movant's case that would make it impossible for a reasonable fact-finder to return a verdict in the non-movant's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A movant-defendant may show that he is entitled to judgment as a matter of law by demonstrating that the plaintiff could not prove an essential element of his case. *Id.* at 322-23. It is then up to the non-movant to demonstrate to the court that there are genuine issues of material fact and that he has made a sufficient showing on each of the essential elements of his case. *Emmett v. Johnson*, 532

---

[3] Because Plaintiff's Motion for Summary Judgment is untimely under the Pretrial Order, I construe Boddie-Noell's Memorandum in Response to Plaintiff's Motion for Summary Judgment as a reply brief.

7

F.3d 291, 297 (4th Cir. 2008); *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). Therefore, summary judgment is appropriate when the moving party points out a *lack* of evidence to support an essential element of his or her claim. *See Blair v. Collonas Shipyards Inc.*, 52 F. Supp. 2d 687, 692 (E.D.Va. 1999), *aff'd* 203 F.3d 819 (4th Cir. 2000).

## IV. DISCUSSION

Virginia law governs this diversity case. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78–79 (1938). Under Virginia law, the rules applicable to slip-and-fall cases are well settled. In Virginia, a business owner owes its customers a duty to exercise ordinary care towards them while they are on the premises. *See, e.g.*, *Harrison v. The Kroger Co.*, 737 F. Supp. 2d 554, 556 (W.D. Va. 2010). This duty requires a business owner:

> to have the premises in reasonably safe condition for [a customer's] visit; to remove within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons had placed there; to warn the plaintiff of the unsafe condition if it was unknown to her, but was, or should have been known to the defendant.

*Id.* at 557 (quoting *Colonial Stores v. Pulley*, 203 Va. 535, 537 (1962)); *see also Winn-Dixie Stores, Inc. v. Parker*, 240 Va. 180, 182 (1990) (citing *Colonial Stores*, 203 Va. at 537). Accordingly, to establish a *prima facie* case of premises liability, the plaintiff must prove the existence of an unsafe condition on the premises, *Hodge v. Walmart*, 360 F.3d 446, 451–42 (4th Cir. 2004) (citing *Kendrick v. Vaz, Inc.*, 244 Va. 380, 384 (1992)), and "'*why* and *how* the incident happened,'" *id.* at 451 (quoting *Town of West Point v. Evans*, 224 Va. 625, 628 (1983)) (emphasis in original). Where the plaintiff can show both an unsafe condition and how that condition caused her injury, she "is not precluded . . . from reaching a jury on the issue of negligence simply because she lacks evidence as to *why* the unsafe condition occurred." *Id.* at 452. Rather, where the evidence would allow a reasonable jury to find that the premises owner

8

had actual or constructive knowledge of the unsafe condition, the plaintiff's claim may survive summary judgment. *Id.*

The existence of the unsafe condition and the fact that it caused Plaintiff's injury appear largely undisputed in this case. Defendant's Motion for Summary Judgment presents two dispositive issues: (1) whether the evidence shows that Boddie-Noell had constructive notice of the liquid on the restaurant floor; and (2) whether Plaintiff was contributorily negligent as a matter of law because the liquid was an open and obvious unsafe condition.

A. <u>Whether Boddie-Noell Had Constructive Notice of the Unsafe Condition</u>

To establish a *prima facie* case of premises liability, the plaintiff must introduce evidence of the premises owner's actual or constructive knowledge of the defective condition. *Grim v. Rahe, Inc.*, 246 Va. 239, 242 (1993) (citing *Roll' R' Way Rinks, Inc. v. Smith*, 218 Va. 321, 327 (1977)). Where the premises owner's own affirmative conduct causes the unsafe condition, notice of the condition is imputed to the owner provided the danger is reasonably foreseeable. *Harrison*, 737 F. Supp. 2d at 557 (citing *Memco Stores, Inc. v. Yeatman*, 232 Va. 50, 55 (1986)). Where the premises owner merely fails to remove or warn of the dangerous condition, however, the relevant standard is "'whether the defendants had actual or constructive notice, that is whether they knew or should have known about the presence of the [hazardous condition] that caused [plaintiff's] fall and failed to remove it within a reasonable amount of time or warn of its presence.'" *Id.* at (quoting *Ashby v. Faison & Assoc., Inc.*, 247 Va. 166, 170 (1994)). In this case, Plaintiff has neither alleged nor produced any evidence that any affirmative conduct of Boddie-Noell's employees caused the liquid to accumulate on the dining room floor. Therefore, Plaintiff must show that Boddie-Noell had either actual or constructive knowledge of the condition. The record is entirely bereft of any evidence showing Boddie-Noell's actual notice of

9

the liquid on the floor. Roberson testified that she did not know and no one had notified her that the dining room floor was wet prior to Plaintiff's fall. (Roberson Dep. 15:15–16:1; 23:4–13.) Plaintiff has produced no evidence to the contrary. Accordingly, to survive summary judgment, Plaintiff must show that Boddie-Noell's employees had constructive notice of the water.

To prove constructive notice, Plaintiff must show that under the circumstances Boddie-Noell should have known of the dangerous condition that caused Plaintiff's accident. *Ashby*, 247 at 170; *Winn-Dixie*, 240 Va. at 184 (citing *Colonial Stores*, 203 Va. at 537–38). Constructive notice, therefore, "may be shown by evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition." *Grim*, 246 Va. at 242 (citing *Colonial Store*s, 203 Va. at 537). "Hence, if the evidence fails to show when a defect occurred on the premises, the plaintiff has not made out a *prima facie* case." *Id.* (citing *Winn-Dixie*, 240 Va. at 184). In sum, if the plaintiff fails to adduce any evidence as to when or for how long the unsafe condition existed, summary judgment for the defendant is appropriate. *Hodge*, 360 F.3d at 454; *Harrison*, 737 F. Supp. 2d at 560; *Scarce v. K-Mart Corp.*, No. 4:05cv42, 2006 U.S. Dist. LEXIS 17532 at*7 (W.D. Va. April 7, 2006).

Plaintiff's case cannot survive summary judgment because she has failed to put forth any evidence to show when the liquid accumulated on the restaurant floor. Plaintiff, Cooper, Cobbs, and Roberson all testified that they have no knowledge whatsoever as to when water accumulated or how long it was present. (Logan Dep. 50:17–22; Cooper 19:6–12; Cobbs Dep. 30:23–31:3; Roberson Dep. 15:15–23, 23:4–22.) Absent such evidence, Plaintiff cannot establish her *prima facie* case. In her Memorandum in Support of Plaintiff's Motion for Summary Judgment/Memorandum Opposing Defendant's Motion for Summary Judgment, Plaintiff appears to argue that she need not prove constructive notice because she has produced

10

sufficient evidence as to why the unsafe condition occurred—*i.e.*, customers tracked in melted ice and snow from outside.[4]  (Mem. in Supp. of Pl.'s Mot. for Sum. J. pg. 7.)  Plaintiff, however, misunderstands the law on this point.  The ability to prove how or why the unsafe condition materialized does not relieve the plaintiff of the burden of proving some form of notice to the premises owner in cases where its affirmative conduct did not cause the unsafe condition.  *See Hodge*, 360 F.3d at 452–53, 454; *Gauldin v. Virginia Winn-Dixie, Inc.*, 370 F.2d 167, 169 (4th 1966); *Harrison*, 737 F. Supp. 2d at 557–58.  Although notice is imputed where the premises owner's affirmative conduct causes the unsafe condition, notice remains, nevertheless, a *prima facie* element of negligence in a slip-and-fall case.  *See Grim*, 246 Va. at 242; *Winn Dixie*, 240 Va. at 184.  In sum, because the record contains no evidence that Boddie-Noell caused the water to accumulate on the floor, Plaintiff must prove notice.  Accordingly, the evidence cited by Plaintiff in support of the dangerous condition's existence and origin proves largely irrelevant.

Plaintiff points to evidence in the record which, she contends, shows that Boddie-Noell was aware of the unsafe conditions caused by the snow and ice outside on the restaurant sidewalk.[5]  (Mem. in Supp. of Pl.'s Mot. for Sum. J. pg. 7–8.)  She argues that Roberson's

---

[4] Boddie-Noell argues that Plaintiff has produced no evidence showing that the liquid substance was in fact water or that it came from outside.  (Def.'s Mem. in Resp. to Pl.'s Mot. for Sum. J. pg. 2.)  It argues, therefore, that Plaintiff lacks any evidence as to the source of the defective condition.  (Def.'s Mem. in Supp of Def.'s Mot. for Sum. J. pg. 7.)  Although the record reveals no direct evidence that the liquid substance was water, I find, based on Cooper's and Cobbs's description of it, that the jury could reasonably infer that the liquid was water that other customers had tracked in from outside.  Cooper, in particular, described the water as extending through the airlock "[l]ike a path to the front counter."  (Cooper Dep. 18:8–22.)  Therefore, although no witnesses actually saw customers track water into the restaurant, I draw such an inference in the Plaintiff's favor.  *See Turley v. Costco Wholesale Corporation*, No. 1:05cv518, 2006 U.S. Dist. LEXIS 7663 at * 6 (E.D. Va. February 6, 2006), *aff'd* 220 Fed. Appx. 179 (2007).

[5] To the extent that Plaintiff seeks to establish a *prima facie* case of negligence based on Boddie-Noell's failure to properly maintain the outside sidewalk, her argument fails.  Boddie-Noell

11

actions in shoveling the sidewalk, deploying snowmelt, and placing warning cones outside and in the airlock prior to Plaintiff's fall demonstrate her awareness of this dangerous condition.[6] (*Id.* at 7.) She seemingly suggests that the dangerous conditions outside should have put Boddie-Noell on notice that water could accumulate inside the restaurant. Such evidence, however, is insufficient proof of constructive notice. Plaintiff must show that Boddie-Noell "ha[d] actual or constructive notice of the *specific* unsafe condition that injured her." *Hodge*, 360 F.3d at 453–54 (citing *Grim*, 246 Va. at 242) (emphasis in original); *Meyer v. Boddie-Noell Enterprises, Inc.*, No. 3:10cv386, 2011 U.S. Dist. LEXIS at *16–17 (E.D. Va. January 5, 2011). Although awareness of severe outside weather conditions might render the unsafe condition foreseeable, it is insufficient proof of notice for purposes of premises liability. *Id.* at 453.

Boddie-Noell cites compelling authority holding that inclement weather alone is insufficient to establish constructive notice. (Def.'s Mem. in Resp. to Pl.'s Mot. for Sum. J. pg. 3–4.) In *Turley v. Costco Wholesale Corporation*, No. 1:05cv518, 2006 U.S. Dist. LEXIS 7663 (E.D. Va. February 6, 2006), *aff'd* 220 Fed. Appx. 179 (2007), the court held that the plaintiff failed to show constructive notice on facts largely identical to the present. In *Turley*, as in the present case, the plaintiff entered a store during a snowstorm. *Id.* at *2. Prior to entering the

---

correctly states that under Virginia law, a business owner "may wait until the end of a storm and a reasonable time thereafter before removing ice and snow from an outdoor entrance, walk, platform, or steps." *Amos v. NationsBank, N.A.*, 356 Va. 344, 346 (1998) (citing *Walker v. The Memorial Hospital*, 187 Va. 5, 13 (1948)). Here, by all accounts, the snow storm had not yet subsided at the time of Plaintiff's accident. Accordingly, Boddie-Noell was under no duty to clear the sidewalk.

[6] To the extent that Plaintiff argues that Roberson's placement of a warning cone in the air lock before opening the restaurant that morning (Roberson Dep. 20:18–21:21) constitutes proof of actual notice of the dangerous condition, her argument fails. Plaintiff points to no evidence that any dangerous condition was present at this time. At most, Roberson's actions demonstrate merely her awareness that a dangerous condition might at some point materialize in the air lock. *See Kellam v. Wal-Mart Stores, Inc.*, 843 F. Supp. 1074, 1076 (E.D. Va. 1994). Such general awareness is insufficient to show actual or constructive notice as explained *infra*.

12

store, the plaintiff had walked through "four to six inches of snow." *Id.* As the plaintiff was

obtaining a shopping cart at the store's entrance area, he slipped, presumably on snow, ice, or

water. *Id.* at \*2, 4–5. As in the present case, the plaintiff adduced no evidence as to how long

the substance was present in the vestibule. *Id.* at \*3. As evidence of constructive notice,

Plaintiff submitted that the defendant was aware of the hazardous weather conditions as

demonstrated by its placing salt and sand in the parking lot and directly outside the entrance. *Id.*

at 7–8. Relying heavily on the Supreme Court of Virginia's decision in *Ashby v. Faison &*

*Associates*, 247 Va. 166 (1994), the court held:

> There is nothing to suggest that Costco actually knew of the
> dangerous condition in the vestibule or that the wet conditions in
> the vestibule existed long enough that the defendant should have
> known of its existence in time to remedy it. As *Ashby* instructs,
> evidence of inclement weather alone is insufficient to find
> constructive knowledge.

*Id.* at \*10. On facts nearly identical to the present case, therefore, the court ruled that the

plaintiff must show constructive notice of the actual defect that caused the plaintiff's accident,

not merely outside conditions that could foreseeably cause such a defect.

 This decision appears consistent with Virginia law. In *Ashby*, the Supreme Court of

Virginia, similarly rejected the plaintiff's argument that:

> there was sufficient evidence from which the Jury could have
> found that it was raining on the morning of the accident and that
> the defendants had actual or constructive notice that whenever it
> rained, it was foreseeable that water would be brought into the
> building and the floor would become slippery and create a
> hazardous condition for invitees.

247 Va. at 169. The court explained that this foreseeability standard is only appropriate where

the premises owner's affirmative conduct caused the unsafe condition. *Id.* (citing *Winn Dixie*,

240 Va. at 183 n.3; *Memco Stores*, 232 Va. at 55). In cases of passive conduct, like the present

Case 4:11-cv-00008-JLK-RSB   Document 58   Filed 01/18/12   Page 13 of 22   Pageid#: 1057

case, "the applicable standard is whether the defendant's had actual or constructive notice . . . *of the presence of the water* that caused [the plaintiff's] fall." *Id.* at 170 (citing *Winn Dixie*, 240 Va. at 184) (emphasis added).  Moreover, the guiding factor in determining whether the owner had constructive notice is the length of time that the condition existed.  *Id.*  Accordingly, *Ashby* appears to stand for the rule that mere notice of weather conditions that could foreseeably cause the unsafe condition is insufficient to establish constructive notice of the unsafe condition itself.[7] Rather, the owner must have notice of the particularized defect that actually causes the plaintiff's injury.  General knowledge of potential peril is insufficient.  To allow Plaintiff to establish notice based on Boddie-Noell's awareness of the snowy conditions outside the restaurant would effectively undermine the distinction between the standards applied to defects caused by the

---

[7] At least one Virginia court has seemingly implied in dicta that under *Ashby*, a premises owner's awareness of inclement weather may support a finding of constructive notice if the plaintiff can demonstrate sufficient duration and severity of those conditions.  *See Souders v. Padgett*, 43 Va. Cir. 507, 508, 510 (1997).  To the extent that that court or others have recognized such a rule, I believe this to be a misunderstanding of *Ashby*'s holding.  The *Ashby* court did note:

> [T]he evidence was insufficient as a matter of law to show that weather conditions on the morning in question were so severe that the use of warning cones or the posting of a porter in the lobby was required . . . She presented no evidence to show that 'a lot of rain' fell and lasted 'a long period of time' or that the weather conditions were severe, these being the circumstances which would have triggered the necessity for Faison to take greater precautionary measures than placing rain mats inside the doorways to the building.

*Ashby*, 247 Va. at 170–171.  At this point in the opinion, however, the court was not addressing the constructive notice element.  Rather, having disposed of the constructive notice issue, the court was addressing the plaintiff's argument "that the defendants breached the duty they owed her because they 'failed to comply with their own precautionary measures on the day in question in that they did not set out the warning cones or have the porter standing by the entrance to mop the water.'"  *Id.* at 170.  Therefore, these facts were only relevant in determining whether the defendant was negligent in failing to implement its own established policies and procedures for dealing with inclement weather, an issue not presented here.  *See id.* at 168, 170–71.

14

premises owner's affirmative conduct and those caused by passive conduct. Accordingly, Plaintiff's argument that the severe weather could provide constructive notice is misplaced.

Plaintiff also argues that the evidence shows that Roberson shoveled the sidewalk and deployed snow melt at approximately 6:45 a.m. and that, therefore, the water accumulated on the dining room floor during the approximately forty intervening minutes before Plaintiff's accident. (Mem. in Supp. of Pl.'s Mot. for Sum. J. pg. 8.) At best, however, this evidence shows only that the water accumulated at some point between 6:45 a.m. and Plaintiff's fall. Absent evidence of how long the water was present, the mere fact that Roberson was at or near the eventual location of the spill does not prove constructive notice. *Gauldin*, 370 F.2d at 170. It is equally as plausible to assume that the water had been on the floor for only a few minutes at the time of Plaintiff's fall as it is to assume that it had been on the floor long enough for Boddie-Noell to have acquired constructive notice of it. *Scarce*, 2006 U.S. LEXIS at *10–11; *Grim*, 246 Va. at 243; *Winn-Dixie*, 240 Va. at 184 (citing *Colonial Stores*, 203 Va. at 537–38). Plaintiff also points briefly to the large quantity and area of the water, suggesting that the water must have accumulated over a significant period of time. (Mem. in Supp. of Pl.'s Mot. for Sum. J. pg. 8.) Without any specific evidence as to precisely how the water got on the floor, however, such an abstract hypothesis constitutes mere speculation. *See Scarce*, 2006 U.S. LEXIS 17532 at *10. Given the severe weather conditions outside the restaurant, it is equally plausible that a large number of customers deposited the water over a relatively short period of time.[8] *See id.*; *see also Hodge*, 360 F.3d at 454. The record is entirely devoid of evidence as to when various other customers arrived at the restaurant. A jury could only determine the duration of the unsafe

---

[8] Here again, I am drawing an inference in Plaintiff's favor that the water was deposited on the floor by other customers.

15

condition "'as a result of surmise, speculation, and conjecture.'"  *Harrison*, 737 F. Supp. 2d at 560 (quoting *Colonial Stores*, 203 Va, at 538).

In sum, Plaintiff has failed to provide sufficient evidence as to when the unsafe condition materialized; therefore, she cannot establish that it existed for a sufficient length of time to charge Boddie-Noell with notice of it.  *Hodge*, 360 F.3d at 454.  Accordingly, Plaintiff has failed to prove the *prima facie* element of notice, and summary judgment in favor of Boddie-Noell is appropriate.  *Id.*; *Harrison*, 737 F. Supp. 2d at 560.

B.  Whether Plaintiff Was Contributorily Negligent as a Matter of Law Because the Unsafe Condition Was Open and Obvious

As an alternative ground for summary judgment, Boddie-Noell submits that Plaintiff was contributorily negligent as a matter of law because the water constituted an open and obvious danger.  While a business owner "'must give notice or warning of an unsafe condition which is known to him and which is unknown to the invitee, such notice is not required where the dangerous condition is open and obvious, and is patent to a reasonable person exercising ordinary care for his own safety.'"  *Fultz v. Delhaize America, Inc.*, 278 Va. 84, 89 (2009) (quoting *Knight v. Moore*, 179 Va. 139, 145 (1942)).  "A business invitee has the duty to be aware of open and obvious dangers."  *O'Brien v. Everfast, Inc.*, 254 Va. 326, 332 (1997) (citing *Tazewell Supply Co. v. Turner*, 213 Va. 93, 95 (1972)).

A plaintiff who slips and falls as a result of an open and obvious danger is guilty of contributory negligence as a matter of law.  *Freeman v. Case Corp.*, 118 F.3d 1011, 1014 (4th Cir. 1997); *Scott v. Lynchburg*, 241 Va. 64, 66 (1991) (citing *Rocky Mount Shopping Ctr. Assoc. v. Steagall*, 235 Va. 636 (1988)).  This principle holds true even when the plaintiff did not see the open and obvious defect.  *Cameron v. K-Mart Corp.*, Civil No. 3:09cv81, 2010 U.S. Dist. LEXIS 76224 at *7 (W.D. Va. July 28, 2010) (citing *Rocky Mount*, 235 Va. at 637).  Whether a danger

16

is open and obvious is usually a question for the jury. *Id.* (citing *Shiflett v. M. Timberlake*, Inc. 205 Va. 406, 411 (1972)).  Where reasonable minds could not differ, however, the court may find contributory negligence as a matter of law. *Fultz*, 278 Va. at 89 (citing *City of Roanoke v. Sutherland*, 159 Va. 749, 758 (1933)); *Artip v. E.E. Berry Equip. Co.*, 240 Va. 354, 358 (1990); *see also Newcomb v. Food Lion*, No. 95-3044, 1996 U.S. App. LEXIS 21439 at *4 (4th Cir. August 20, 1996) ("In clear cases . . . the contributory negligence of the plaintiff may be established as a matter of law.").

Courts in this jurisdiction have held that "the guiding inquiry in determining whether a defect was open and obvious is 'whether the plaintiff would have seen the hazard had he been looking.'" *Cameron*, 2010 U.S. Dist. LEXIS 76224 at *8 (citing *Hudson v. Kroger Co.*, No. 6:06cv46, 2007 U.S. Dist. LEXIS 51941 at *3 (W.D. Va. July, 18 2007)).  The Supreme Court of Virginia, however, has declined to hold that a pedestrian's failure to look down when stepping forward constitutes contributory negligence as a matter of law; rather, courts should consider the circumstances of each case. *Fultz*, 278 Va. at 275 (citing *City of Suffolk v. Hewitt*, 226 Va. 20, 28 (1983*)); Little Creek Investment Corp. v. Hubbard*, 249 Va. 258, 261 (1995).  The relevant standard, therefore, is essentially a totality of the circumstances test.[9]

A survey of the relevant Virginia case law reveals that solid tripping hazards, such as stray inventory and equipment, or surface depressions constitute open and obvious dangerous conditions as a matter of law more often than do liquid spills. *See Cameron*, 2010 U.S. Dist. LEXIS 76224 at *9 (finding a flat box between sofas in a store furniture display open and

---

[9] Under Virginia law, as a general rule, a finding of contributory negligence involves an objective test: "whether a plaintiff failed to act as a reasonable person would have acted for his own safety under the circumstances." *Artrip v. E.E. Berry Equip. Co.*, 240 Va. 354, 358 (1990) (citing *Philip Morris Inc.* v. *Emerson*, 235 Va. 380, 402 (1988); *Arrington* v. *Graham*, 203 Va. 310, 314 (1962)).

obvious); *Rocky Mount*, 235 Va. at 637 (finding a depression in a sidewalk "eight to twelve inches across and two to three inches deep" open and obvious); *West v. City of Portsmouth*, 217 Va. 734, 739 (1977) (finding boxes in a six-foot-wide, adequately lighted store aisle open and obvious). Nevertheless, the Supreme Court of Virginia has articulated no bright line test in this regard. At least one Fourth Circuit case has found that a wet floor can constitute an open and obvious hazard under certain circumstances. Boddie-Noell relies on *Newcomb v. Food Lion*, an unpublished Fourth Circuit opinion finding a dangerous condition open and obvious as a matter of law on facts similar to the present case. In *Newcomb*, the plaintiff approached the entrance of a Food Lion grocery store, knowing that it had been raining since early that morning. 1996 U.S. App. LEXIS 21439 at *1. As she approached, she saw other customers near the entrance shaking their umbrellas. *Id.* As the plaintiff entered the store, she slipped on "'several dozen' wet footprints leading from the floor mat to the interior of the store." *Id.* at *2. At the time of her fall, she was looking at shopping carts to her side. *Id.* The plaintiff conceded that she would have seen the footprints had she looked down and that she was aware that customers often track in water during rainy weather. *Id.* In granting summary judgment for the defendant, the court held:

> Patrons in a store are not allowed to be oblivious to the state of their environment. As a matter of law, the Plaintiff should have been on guard for the wet floor, evinced by footprints on a rainy day in an area directly inside the entrance to the store . . . [I]t is reasonable to hold that plaintiff should have been on the look out for a wet floor immediately inside the front of the store when it had been raining all day.

*Id.* at *5–6. In essence, therefore, the court held that where a reasonable person is aware of inclement weather, she should be on the look out for wet floor space at or near a business entrance where other patrons would likely deposit water.

Case 4:11-cv-00008-JLK-RSB   Document 58   Filed 01/18/12   Page 18 of 22   Pageid#: 1062

The present case is factually similar to *Newcomb*. The record establishes beyond question that a severe snow storm was in progress on the date of Plaintiff's accident and that she was aware of the severe conditions. (Logan Dep. 5:18–19, 30:4–31:2.) Indeed, conditions in the area were so severe that Plaintiff felt unable to drive to work safely. (*Id.* 30:8–12.) As the three co-workers travelled to Hardees's, snow continued to fall. (Cooper Dep. 10:23–11:8.) All three co-workers testified that Hardees's parking lot and sidewalk were covered with snow and had not been shoveled or plowed. (Logan Dep. 39:7–12, 39:16–21; Cooper Dep. 12:1–6, 14:17–15:8; Cobbs Dep. 21:18–22:6.) Plaintiff testified that she walked entirely across snow covered ground between the vehicle and the Hardees's entrance. (Logan Dep. 38:23–39:2.) Therefore, as in *Newcomb*, Plaintiff was clearly aware of the inclement weather. Moreover, Plaintiff's fall occurred at the entrance of the business where other customers were likely to track in and deposit water from melted snow. (Logan Dep. 41:2–13, 44:1–22; Cooper Dep. 19–22; Cobbs 33:16–34:14.) In addition, the evidence establishes that Plaintiff would have seen the standing water had she looked down. Both Cooper and Cobbs clearly noticed the water on the floor immediately as they entered the restaurant's outer door. (Cooper Dep. 18:23–19:5, 22:19–21; Cobbs Dep. 33:10–15.) Therefore, two witnesses testified that the dangerous condition was open and obvious, and this was not contradicted by Plaintiff. This case, therefore, is largely indistinguishable from *Newcomb*. In these circumstances, a reasonable person would have anticipated that water may have accumulated on the floor at the restaurant entrance. Therefore, under *Newcomb* the unsafe condition was open and obvious as a matter of law.

Plaintiff attempts to distinguish the present case from *Newcomb* in a number of ways. First, Plaintiff points out that unlike the plaintiff in *Newcomb*, whose gaze was diverted to shopping carts off to her side, "she was looking where she was going." (Mem. in Supp. of Pl.'s

19

Mot. for Sum. J pg. 9.)  Nowhere in *Newcomb*, however, did the Fourth Circuit suggest that this fact was dispositive or even relevant.  Rather, the Fourth Circuit found dispositive that the plaintiff was aware of the inclement weather and that the accident occurred at the store entrance.  *Newcomb*, 1996 U.S. App. LEXIS 21439 at *5–6.  Had the Fourth Circuit relied on the plaintiff's averted gaze in finding her contributorily negligent as a matter of law, its decision would have been inconsistent with Virginia law.  The Supreme Court of Virginia has held: "When . . . the issue of the plaintiff's contributory negligence arises from the plaintiff's injury by an open and obvious dangerous condition, the plaintiff has the burden to show conditions outside herself which prevented her seeing the dangerous condition or which would excuse failure to observe it."  *Fultz*, 278 Va. at 90 (citing *Southern Floors & Acoustics, Inc. v. Max-Yeboah*, 267 Va. 682, 686 (2004)).  In such a case, the plaintiff must prove "'that her excuse for inattention was reasonable, *i.e.*, that the distraction was unexpected and substantial.'"  *Id.* (quoting *Max-Yeboah*, 267 Va. at 686).  In other words, far from being grounds for finding a plaintiff contributorily negligent as a matter of law, conditions that distract the plaintiff from the open and obvious danger may potentially mitigate her negligence in failing to see it.  Here, Plaintiff has offered no evidence of any distractions that prevented her from appreciating the danger.

Plaintiff also points out that in *Newcomb*, the defendant had placed a carpeted mat at the store entrance, whereas in this case, Boddie-Noell failed to take such a precaution.  (Mem. in Supp. of Pl.'s Mot. for Sum. J pg. 9.)  This fact is simply irrelevant to the issue of contributory negligence.  Boddie-Noell's potentially negligent conduct in failing to place such a mat has no impact on Plaintiff's duty to avoid an open and obvious dangerous condition.  Although a carpeted mat may have prevented Plaintiff's fall, it had no effect whatsoever on her ability to anticipate the wet entrance floor and take appropriate precautions for her own safety.

20

Finally, Plaintiff argues that the present case is factually closer to a case from the Eastern District of Virginia, *William v. Food Lion, LLC*, Civil Action No. 3:09cv108, 2009 U.S. Dist. LEXIS 97710 (E.D. Va. October 16, 2009). In *Williams*, the court found that whether a wet floor in a grocery store constituted an open and obvious condition constituted a jury issue. *Id.* at *7. That case, however, is factually dissimilar from the present one. The wet floor in *Williams* resulted not from inclement weather, but from a store employee mopping up a spill. *Id.* at 8–10. Furthermore, the accident occurred not at the store entrance, but in the main shopping area. *Id.* In sum, *Newcomb* is factually far closer on point; therefore, that case should govern.

Because she was aware of the inclement weather as she entered the restaurant and failed to look out for water deposited by other customers, Plaintiff was contributorily negligent as a matter of law. Accordingly, summary judgment for Boddie-Noell on the ground that Plaintiff failed to recognize an open and obvious danger is appropriate.

## VI. CONCLUSION

For the reasons set forth above, I **DENY** Plaintiff's Motion for Summary Judgment as untimely. Furthermore, I find that Plaintiff has failed to adduce sufficient evidence to charge Boddie-Noell with constructive notice of the water on the dining room floor, **GRANT** Defendant's Motion for Summary Judgment, and **DISMISS** the case. In the alternative, I find contributory negligence on the Plaintiff's part because of the open and obvious nature of the dangerous condition, **GRANT** Defendant's Motion for Summary Judgment, and **DISMISS** the case. Accordingly, I deem Defendant's Motion to Exclude Plaintiff's Expert Witness **MOOT**.

21

The clerk is directed to send a copy of the Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 18th day of January, 2012.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE